FILED
01 SEP 28 PM 1:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DONALD HOOPER, as father and }
next friend of JAMES TRENTON }
HOOPER, a minor, }
       }
   Plaintiff, }
       }
v. }   CASE NO. CV 00-B-0074-NE
       }
LAWRENCE COUNTY BOARD OF }
EDUCATION, JIMMY BLACK, }
       }
   Defendants. }

ENTERED
SEP 2 8 2001

## MEMORANDUM OPINION

Currently before the court is defendants' Motion for Summary Judgment.[1] Plaintiff Donald Hooper, as father and next friend of James Trenton Hooper asserted claims against the Lawrence County Board of Education and Jimmy Black. Plaintiff sued the Lawrence County Board of Education pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, as amended, and § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 20 U.S.C. § 794. (Compl. ¶ 1.) Plaintiff sued Jimmy Black solely under state law claims of outrage and assault and battery. (*Id.*) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court determines that plaintiff's federal claims are due to be dismissed for failure to exhaust the administrative

---

[1] Although styled a motion for summary judgment, defendants raise issues concerning the court's subject matter jurisdiction, and therefore, its ability to decide this case on the merits. Because a grant of summary judgment is a decision on the merits, and some of the issues addressed in the motion are more suitably addressed in a motion to dismiss, the court treats the motion as a motion for summary judgment or dismissal for lack of subject matter jurisdiction. *See Goodman ex. rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001). Matters outside the pleadings are properly considered in determining subject matter jurisdiction. *See id.*

procedures of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise jurisdiction over the remaining state law claims. Consequently, all claims are due to be dismissed.

## I. STATUTORY BACKGROUND

The Individuals with Disabilities Education Act ("IDEA"), formerly known as the Education for All Handicapped Act ("EHA"), 20 U.S.C. § 1400, *et seq*., creates a comprehensive scheme requiring states receiving federal education funds to implement policies and procedures to ensure that students with disabilities receive a "free appropriate public education." Under the IDEA, each state receiving federal education funds must develop, review and revise an individualized education program ("IEP") for each child with a disability. *See* 20 U.S.C. § 1412(a)(4). The IEP is a written statement setting forth, among other things, the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures for determining whether the child has met the goals. *See* 20 U.S.C. § 1414(d)(1)(A). The IEP dictates the extent to which the child with a disability may participate with children who are not disabled in the regular classroom. *See* 20 U.S.C. § 1414(d)(1)(A)(iv). Furthermore, the IDEA requires that each disabled child be educated in the least restrictive environment that is appropriate: children with disabilities must be educated with children who are not disabled if possible, and may only be segregated from the regular educational environment when the child cannot be satisfactorily educated there with the use of any needed supplementary aids or services. *See* 20 U.S.C. § 1412(a)(5).

To carry out these objectives, the IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows

parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. *N.B. by D.G. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (citing *Honig v. Doe*, 484 U.S. 305, 311-12 (1988)). An IEP Team, composed of, *inter alia*, the parents of the child with a disability, a regular education teacher of the child, and a special education teacher, develops the child's IEP. *See* 20 U.S.C. § 1414(1)(B), (3). Parents dissatisfied with placement decisions may invoke the IDEA's elaborate framework of procedural safeguards by which the disabled child's parents can assure that the child is receiving "free appropriate public education." *See* 20 U.S.C. § 1415(a). The parents of a disabled child may examine all records concerning the child and participate in meetings concerning the identification, evaluation, and educational placement of the child. *See* 20 U.S.C. § 1415(b)(1). Parents are entitled to prior notice of any proposal or refusal to initiate or change the identification, evaluation or educational placement of their child with a disability. *See* 20 U.S.C. § 1415(b)(3). Parents may present complaints concerning the identification, evaluation, or educational placement of the child, or the provision of free appropriate public education to the child. *See N.B. by D.G.*, 84 F.3d at 1378; 20 U.S.C. § 1415(b)(6). Parents may seek review through an "impartial due process hearing" conducted by either the local school board or the State educational agency. *See* 20 U.S.C. § 1415(f)(1). If unsatisfied with the results of a hearing before the local school board, the parents may appeal to the State educational agency. *See N.B. by D.G.*, 84 F.3d at 1378; 20 U.S.C. § 1415(g).

If the parents are unsatisfied with the results of the State educational agency's decision, they "have the right to bring a civil action with respect to the complaint pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of

the United States without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). In hearing such an action, the court has before it " the records of the administrative proceedings," and "additional evidence [heard] at the request of a party." *See* 20 U.S.C. § 1415(i)(2)(B). "[B]asing its decision on the preponderance of the evidence, [the court] shall grant such relief as . . . is appropriate." *See id.* The statute by its terms does not limit the court's discretion in fashioning "appropriate" relief.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Donald Hooper ("plaintiff") and his son, James Trenton Hooper ("Hooper"), reside in Lawrence County, Alabama. Defendant Lawrence County Board of Education ("the Board") is a county board of education organized and existing under the laws of the State of Alabama. Defendant Jimmy Black ("Black") resides in Lawrence County, Alabama. At all times relevant to this lawsuit, the Board employed Black as a teacher at the Hazelwood High School.

During the 1997-1998 school year, Hooper was a qualified student with a disability and received services under the IDEA. As the result of a birth defect, Hooper suffers from a congenital malformation of his hips called hip dysplasia. Hooper has a unique posture, stance, and gait that are significantly different from the normal person and that will progressively worsen as he ages. He cannot bend, run, walk great distances, or participate in many activities such as sports. Furthermore, he is a special education student, who has been evaluated and determined to have a learning disability.

During the 1997-1998 school year, Hooper, an eighth grade student at Hazelwood High School, was in Black's Vocational Agri-business class. He required no modification to his

course work in Black's class due to his physical or learning disabilities. Plaintiff claims that from approximately August 17, 1997, to January 13, 1998, about every other day, Black called Hooper derogatory names and made fun of the way Hooper walked. Black allegedly called Hooper names like "crippled," "penguin," "peg leg," "ignorant," and "queer." Black allegedly told Hooper that he was not worth a dime. Black allegedly made fun of Hooper's poverty, telling him that it looked like Black was going to have to buy Hooper some clothes. Plaintiff alleges that Black told Hooper that he and David Rhoden, another special education student, would make good queers because they were alike.

On January 13, 1998, plaintiff refused to read aloud from the textbook as was required in Black's class. Black allowed plaintiff to regain the points he had lost by refusing to read by cleaning the shop area. Two other students, Josh Nunley ("Nunley") and Mark Brown, were also allowed to clean the shop that day. Instead of cleaning, Nunley and Hooper engaged in horseplay. Nunley hit Hooper with a broken broom handle, and Hooper responded by hitting Nunley with a piece of scrap wood. According to plaintiff, when Black entered the shop, Nunley laughed and told Black that he was going to make Hooper work. In response, Black allegedly said to Nunley, "Go ahead. Lay it on him. He's not worth a dime." Then, a third student pushed Hooper into a scrap box. Plaintiff alleges that Nunley then hit Hooper in the thigh repeatedly, while Black continued to encourage Nunley.

After the incident, plaintiff did not exercise any of his administrative rights under the IDEA. He made no complaint concerning his son's placement in Black's class. He did not seek a "due process hearing." Plaintiff simply removed his son from Black's class. Later, Hooper dropped out of school, and has since attended no other school or training program. Finally,

plaintiff initiated this lawsuit, seeking relief including but not limited to compensatory damages and punitive damages. (*See* Compl. ¶ 33.)

### III. DISCUSSION

#### A. FAILURE TO EXHAUST THE IDEA'S ADMINISTRATIVE REMEDIES

"The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." *N.B. by D.G.*, 84 F.3d at 1378 (citing *Ass'n for Retarded Citizens of Alabama, Inc. v. Teague*, 830 F.2d 158, 160 (11th Cir. 1987)). Before commencing suit under the IDEA, plaintiff must exhaust the administrative remedies specified in 20 U.S.C. § 1415(f) and (g). However, exhaustion is not a prerequisite to suit when the IDEA's administrative remedies would be futile or inadequate. *See N.B. by D.G.*, 84 F.3d at 1379.

The threshold issue in this case is the scope of IDEA section 1415(l), which states in full:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subsection.**

20 U.S.C. § 1415(l) (emphasis added). Under this section, the IDEA is not the exclusive avenue by which parents may enforce the rights of disabled children in educational settings. *Hope v. Cortines*, 872 F. Supp. 14, 17 (E.D.N.Y. 1995). However, the right to pursue remedies through other federal statutes requires exhaustion of the IDEA's administrative procedures prior to commencing a lawsuit if the relief sought is also available under the IDEA. *Id.*

In the instant case, plaintiff brought suit against the Board under the ADA and the Rehabilitation Act claiming that his son, Hooper, was harassed at school by his teacher and assaulted at school at the instigation of his teacher on account of Hooper's disability. The IDEA does not prohibit plaintiff's suit under such statutes. *See* 20 U.S.C. § 1415(l). However, the IDEA requires plaintiff to exhaust the IDEA's administrative remedies prior to filing an action in court alleging violations of the ADA or the Rehabilitation Act, if plaintiff is seeking relief that is also available under the IDEA. *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420, 1422 (11th Cir. 1998). Plaintiff did not pursue administrative remedies available under the IDEA.

In *Babicz*, parents of two sisters with chronic asthma, allergies, migraine syndrome and sinusitis brought claims against the local school board under the ADA and the Rehabilitation Act. *See* 135 F.3d at 1421-22. The complaint, seeking compensatory damages and injunctive relief, alleged that the school failed to implement its own formal decision for accommodating the girls. *See Babicz*, 135 F.3d at 1421. Expressly following the Second Circuit's decision in *Hope v. Cortines*, 69 F.3d 687 (2d Cir. 1995), and the Seventh Circuit's decision in *Charlie F. by Neil F. v. Board of Education of Skokie School District 68*, 98 F.3d 989 (7th Cir. 1996), the Eleventh Circuit panel affirmed the district court's dismissal of plaintiff's complaint without prejudice for lack of subject matter jurisdiction based on plaintiff's failure to exhaust the IDEA's administrative remedies. *See id.*, 135 F.3d at 1422. Affirming the district court's decision, the Eleventh Circuit expressed agreement with the Second and Seventh Circuits' conclusion "that claims asserted under Section 504 and/or the ADA are subject to Section 1415([l])'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA." *See id.*

### 1. *Relief Available Under the IDEA*

Defendants contend that plaintiff is seeking relief that is available under the IDEA. (Def.'s Brief in Support ("Def.'s Brief") at 5-8.) This suit arises out of alleged incidents of harassment and assault committed by plaintiff's teacher, Black, while acting within the scope of his job as plaintiff's teacher. The alleged incidents occurred at school while plaintiff was under Black's direction and control. Plaintiff attended Black's class according to the dictates of his IEP, as mandated by the IDEA. It is undisputed that the alleged incidents would not have occurred but for plaintiff's placement, pursuant to his IEP, in Black's class.

The court finds defendants' reasoning persuasive. In *Charlie F.*, upon which the Eleventh Circuit panel relied in *Babicz*, a disabled student sought money damages from the local school board and others for alleged violations of 42 U.S.C. § 1983, the Rehabilitation Act, and the ADA. *See* 98 F.3d at 990. According to the complaint, the teacher repeatedly invited her pupils to express their complaints about Charlie, a student with an IEP, which led to humiliation, fistfights, mistrust, loss of confidence and self-esteem, and disruption of Charlie's educational progress. *See id.* The teacher instructed her pupils to tell no one about the venting sessions. *See id.*

In *Charlie F.*, plaintiff argued that because he was seeking compensatory damages, which are not available relief under the IDEA, exhaustion of remedies was not a prerequisite to suit. *See id.* at 991-92. The Seventh Circuit ruled that "'relief available' [] mean[s] relief for the events, conditions, or consequences of which the person complains, not necessarily relief of the kind the person prefers." *Id.* at 992. If the IDEA provides a remedy for plaintiff's grievance, then there is relief available under the IDEA, whether or not it is the kind of relief that plaintiff

8

desires. *See id.* at 992.

The IDEA provides a remedy for Hooper's grievance, although it may not be the one he desires. Hooper claims that defendants' conduct caused him to experience physical pain and suffering, to seek medical treatment, and to suffer severe emotional distress. (Compl. ¶ 31.) If Hooper had pursued the IDEA's administrative remedies, relief could have been made available to him. Hooper could have been provided with a more appropriate educational setting, and his father could have participated in the placement decision. *See* 20 U.S.C. § 1414(f). Hooper could have been provided with counseling services to help him cope with the severe emotional distress he alleges he suffered. *See Charlie F.*, 98 F.3d at 992. Therefore, there is relief available under the IDEA for Hooper's grievances.

Plaintiff argues that because Hooper required no IDEA services in connection with Black's class, the IDEA's exhaustion requirements are inapplicable. (Pl.'s Response Brief ("Pl.'s Brief") at 8.) The IDEA mandates that each child with a disability be placed according to the dictates of his IEP. *See* 20 U.S.C. § 1412(a)(5). The IEP states the extent to which the child may participate in regular classrooms with children who are not disabled. *See* 20 U.S.C. § 1414(d)(1)(A)(iv). The IDEA requires that the child be placed in the regular classroom unless he cannot be satisfactorily educated there. *See* 20 U.S.C. § 1412(a)(5). Because Hooper is a child with a disability under the IDEA, the IDEA governs his educational placements and provides relief for the events, conditions, and consequences arising out of that placement. *See Charlie F.*, 98 F.3d at 992.

Therefore, Hooper is subject to the IDEA's exhaustion requirements, and, unless an exception applies, his claims are due to be dismissed for failure to exhaust administrative

remedies.

### 2. Futility or Inadequacy of Administrative Remedies

Exhaustion of administrative remedies is not a prerequisite to suit where the administrative remedies would be futile or inadequate. *See N.B. by D.G.*, 84 F.3d at 1379. Plaintiff argues that under the Sixth Circuit's decision in *Covington v. Knox County School System*, 205 F.3d 912 (6th Cir. 2000), and the Tenth Circuit's decision in *Padilla v. School District No. 1 in the City and County of Denver*, 67 F.3d 484 (10th Cir. 2000), exhaustion is futile. (Pl.'s Brief at 8-9.) In *Covington*, the plaintiff argued that exhaustion was futile because (1) he sought money damages not available through the administrative process, and (2) he had already graduated, and therefore, injunctive or other equitable relief could not alleviate his injuries. *See* 205 F.3d at 917. The court reasoned that, in general, seeking money damages is not enough to constitute futility. *See id.* The court held that the administrative remedies were futile, because money damages, which are unavailable through the administrative process, were the only remedies available to a child who had graduated. *See id.* at 918.

In *Padilla*, the plaintiff brought suit under the ADA, 42 U.S.C. § 1981, and the IDEA, alleging that defendants had placed her in a windowless closet while restrained in a stroller without supervision contrary to her IEP, and that during one of those incidents she tipped over suffering serious physical injuries. *See* 233 F.3d at 1270-71. Subsequently, the plaintiff moved to a new school district, and then requested an administrative hearing in her former school district seeking any relief available, including money damages. *See id.* at 1271. The hearing officer denied the plaintiff's request on the basis that he lacked jurisdiction over her because she no longer lived in the district. *See id.* Because the plaintiff in *Padilla* sought damages solely to

10

redress physical injuries incurred, and made no complaints of her current education situation, the Tenth Circuit held that plaintiff was not seeking relief available under the IDEA, and therefore, did not need to exhaust administrative remedies prior to filing suit. *See id.* at 1274-75.

Following *Covington* and *Padilla*, plaintiff argues that because Hooper no longer attends school, administrative remedies are futile. (Pl.'s Brief at 8-9.) This argument is unpersuasive. First, the *Covington* court distinguished the case of a child who has graduated from that of a child who was removed from a public school by the unilateral act of his parents. *See* 205 F.3d at 918. The former need not exhaust administrative remedies, but the latter must exhaust them. *See id.* Therefore, *Covington* provides no aid to Hooper, who voluntarily left the school system before bringing suit. Second, contrary to the *Padilla* court's willingness to allow suit without exhaustion where plaintiff had moved from the school district, *see* 233 F.3d at 1274-75, the Eleventh Circuit has held that parents cannot bypass the IDEA's exhaustion requirements by removing their child from the defendant school district, *see N.B. by D.G.*, 84 F.3d at 1379. A parent's unilateral removal of his child from public school is not sufficient to render the IDEA's administrative remedies futile. *See id.* Therefore, under Eleventh Circuit precedent, Hooper's IDEA administrative remedies are neither futile nor inadequate. *See N.B. by D.G.*, 84 F.3d at 1379.

*3. Conclusion*

Because Hooper could have pursued administrative relief that would have been neither futile nor inadequate, exhaustion of the IDEA's administrative remedies is a prerequisite to the filing of this suit. Because Hooper failed to exhaust those administrative remedies, his claims against the Board under the ADA and the Rehabilitation Act are due to be dismissed for lack of

11

subject matter jurisdiction. *See Babicz*, 135 F.3d at 1422 (holding that plaintiff's failure to exhaust the IDEA's administrative procedures warranted the dismissal of ADA and Rehabilitation Act claims without prejudice for lack of subject matter jurisdiction).

## B. PLAINTIFF'S REMAINING STATE LAW CLAIMS

Because plaintiff's federal claims have been dismissed, the only claims remaining are state law claims against Defendant Black. Because the parties are not diverse, the court has no original jurisdiction over these claims under 28 U.S.C. § 1332. Under 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over these state law claims. Consequently, plaintiff's state law claims are due to be dismissed without prejudice.

## CONCLUSION

For the reasons stated herein, the court concludes that defendants' motion for summary judgment, which the court has construed as a motion to dismiss, is due to be granted. Plaintiff's claims under the ADA and the Rehabilitation Act are due to be dismissed for lack of subject matter jurisdiction for failure to exhaust the IDEA's administrative procedures. Plaintiff's remaining state law claims are due to be dismissed without prejudice. An order granting defendants' motion and dismissing this case will be entered contemporaneously herewith.

**DONE** this 27th day of September, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge